Jerry L. Steering [State Bar No. 122509]
LAW OFFICE OF JERRY L. STEERING
4063 Birch Street
Suite 100
Newport Beach, CA 92660
Telephone: (949) 474-1849
Facsimile: (949) 474-1883
info@steeringlaw.com
Attorney for plaintiff Lisa Marie Guy

John R. Cogorno [State Bar No. 63966]
LAW OFFICE OF JOHN R. COGORNO
14121 Beach Boulevard
Westminster, CA 92863
Telephone: (714) 892-2936
Facsimile: (714) 892-5806
cogorno@msn.com

Attorney for plaintiff Kenneth Francis MacDonald

Andrew M. Stein, Esq. [State Bar No. 82963]
LAW OFFICES OF ANDREW M. STEIN
9944 Flower Street
Bellflower, CA 90706
Telephone: (562) 866-9762
Facsimile: (562) 867-3603
e-mail: atty502@aol.com

Attorney for plaintiff Ruth C. Steering, Administratrix Of The Estate Of Ashley Anne MacDonald, Deceased, On Behalf Of The Estate Of Ashley Anne MacDonald

FILED

2008 MAY 23 PM 3:20

CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. SANTA ANA

BY: ______

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MARIE GUY, KENNETH FRANCIS MACDONALD AND RUTH C. STEERING, ADMINISTRATRIX OF THE ESTATE OF ASHLEY ANNE MACDONALD, DECEASED, ON BEHALF OF THE ESTATE OF ASHLEY ANNE MACDONALD,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, SHAWN RANDELL, READ PARKER, ADAM TURNER, DON VOGHT, TERRY TODD, BRIAN SUTTON, YVONNE SHULL and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. SACV 07-865 JVS (JCx)<br><br>FIRST AMENDED COMPLAINT DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983 - RIGHT TO FREEDOM FROM UNLAWFUL / UNREASONABLE SEIZURE OF PERSON, RIGHT TO FREEDOM FROM USE OF UNREASONABLE / EXCESSIVE FORCE ON PERSON, RIGHT TO PARENT – CHILD RELATIONSHIP, RIGHT TO BE FREE FROM UNLAWFUL ENTRY INTO AND SEARCH OF PRIVATE RESIDENCE, FAILURE TO ADEQUATELY TRAIN OFFICERS, AND CALIFORNIA STATE LAW CLAIMS FOR WRONGFUL DEATH, DISTRESS, FALSE ARREST / FALSE IMPRISONMENT, VIOLATION OF RIGHT TO PRIVACY, TRESPASS TO REAL PROPERTY / PRIVATE RESIDENCE, VIOLATION OF CAL. CIVIL CODE § 52.1. AND<br><br>JURY TRIAL DEMANDED |

COME NOW plaintiffs Lisa Marie Guy, Kenneth Francis MacDonald and Ruth C. Steering, Administratrix of the Estate of Ashley Anne Macdonald, Deceased, on behalf of The Estate of Ashley Anne MacDonald, hereinafter collectively referred to as the "plaintiffs", and show this honorable court the following:

JURISDICTIONAL ALLEGATIONS

1. As this action is brought under 42 U.S.C. § 1983 this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. §1331.

2. As the incidents complained of in this action occurred in the County of Orange, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. §1391(b)(2).

3. As plaintiffs' claims brought under California state law arise out of the same transactions and occurrences, and out of a common nucleus of operative facts as the plaintiffs' federal questions claims, this court has jurisdiction over the plaintiffs' California State law claims under its supplemental jurisdiction, and otherwise pursuant to *Mine Workers v. Gibbs*, 383 U.S. 715 (1966.)

GENERAL ALLEGATIONS

4. Plaintiff Lisa Marie Guy, hereinafter referred to as "LISA MARIE", is an individual person, who, at all times complained of in this action, was the natural and legal mother of plaintiffs' decedent Ashley Anne MacDonald.

5. Plaintiff Kenneth Francis MacDonald, hereinafter referred to as "KENNETH", is an individual person, who, at all times complained of in this action, was the natural and legal father of plaintiffs' decedent Ashley Anne MacDonald.

6. Plaintiff Ruth C. Steering, hereinafter referred to as "RUTH", is an individual person, who, is the lawfully court appointed Administratrix of the Estate of plaintiffs' deceased, Ashley Anne MacDonald, and is a plaintiff in this action as the Administratrix of the Estate of Ashley Anne MacDonald.

6. Ashley Anne MacDonald, hereinafter referred to as "ASHLEY", was an individual person, who, at all times complained of in this action, was the natural and legal daughter of plaintiffs LISA MARIE and KENNETH, who was born on October 20, 1987.

7. ASHLEY died, intestate and without issue, on August 25, 2006, as a direct and proximate result of conduct of the defendants complained of in this action on that same date.

8. Defendant Shawn Randell, hereinafter referred to as "RANDELL", is, and was at all times complained of in this action, an agent, employee and sworn peace officer of the City of Huntington Beach Police Department. At all times complained of herein, RANDELL was acting pursuant to his authority as employee and peace officer of the City of Huntington Beach, and was acting in the course of and within the scope of his employment with the City of Huntington Beach.

9. Defendant Read Parker, hereinafter referred to as "PARKER", is, and was at all times complained of in this action, an agent, employee and sworn peace officer of the City of Huntington Beach Police Department. At all times

complained of herein, PARKER was acting pursuant to his authority as employee and peace officer of the City of Huntington Beach, and was acting in the course of and within the scope of his employment with the City of Huntington Beach.

10. Defendant Adam Turner, hereinafter referred to as "TURNER", is, and was at all times complained of in this action, an agent, employee and sworn peace officer of the City of Huntington Beach Police Department. At all times complained of herein, TURNER was acting pursuant to his authority as employee and peace officer of the City of Huntington Beach, and was acting in the course of and within the scope of his employment with the City of Huntington Beach.

11. Defendant Don Voght, hereinafter referred to as "VOGHT", is, and was at all times complained of in this action, an agent, employee and sworn peace officer of, and an investigator with, the Orange County Sheriff's Department. At all times complained of herein, VOGHT was acting pursuant to his authority as employee and peace officer of the County of Orange, and was acting in the course of and within the scope of his employment with the County of Orange.

12. Defendant Terry Todd, hereinafter referred to as "TODD", is, and was at all times complained of in this action, an agent, employee and sworn peace officer of, and an investigator with, the Orange County Sheriff's Department. At all times complained of herein, TODD was acting pursuant to his authority as

employee and peace officer of the County of Orange, and was acting in the course of and within the scope of his employment with the County of Orange.

13. Defendant Brian Sutton, hereinafter referred to as "SUTTON", is, and was at all times complained of in this action, an agent, employee and sworn peace officer of, and an investigator with, the Orange County Sheriff's Department. At all times complained of herein, SUTTON was acting pursuant to his authority as employee and peace officer of the County of Orange, and was acting in the course of and within the scope of his employment with the County of Orange.

14. Defendant YVONNE SHULL, hereinafter referred to as "SHULL", is, and was at all times complained of in this action, an agent, employee and sworn peace officer of, and a Sergeant and an investigator with, the Orange County Sheriff's Department. At all times complained of herein, SHULL was acting pursuant to her authority as employee, peace officer and supervising officer (Sergeant) of the County of Orange, and was acting in the course of and within the scope of his employment with the County of Orange.

15. Defendant City of Huntington Beach is a municipal entity located in the County of Orange, State of California; within the territorial jurisdiction of this court.

16. Defendant County of Orange is a municipal entity located in the State of California; within the territorial jurisdiction of this court.

17. Defendants DOES 1 through 7, inclusive, are sworn peace officers / police officers and/or deputy sheriffs and/or investigators with the Huntington Beach Police Department and/or the Orange County District Attorney's Office and/or the Orange County Sheriff's Department, who are in some substantial way liable and responsible for, or otherwise caused or participated in, the actions complained of by the plaintiffs in this instant action. DOES 1 through 7, inclusive, are natural persons whose identities are presently unknown to plaintiffs, who, therefore, sue these persons by the fictitious name DOE.

18. At all times complained of herein, DOES 1 through 7, inclusive, were acting pursuant to their authority as sworn peace officers and/or police officers and/or deputy sheriffs and/or investigators with the Huntington Beach Police Department and/or the Orange County District Attorney's Office and/or the Orange County Sheriff's Department, and were acting in the course of and within the scope of their employment with said City or said County. Plaintiffs will amend their complaint to show the true identities of DOES 1 through 7, inclusive, when they become aware of said identities.

19. Defendants DOES 8 through 10, inclusive, are sworn peace officers and/or police officers and/or deputy sheriff's / investigators, and are supervisory and/or policy making and/or final policy making officials with the Huntington Beach Police Department and/or the Orange County District Attorney's Office

and/or the Orange County Sheriff's Department, who are in some substantial way liable and responsible for, or otherwise caused or participated in, the actions complained of by plaintiffs in this action. DOES 8 through 10, inclusive, are natural persons whose identities are presently unknown to the plaintiffs, who, therefore, sue these persons by the fictitious name DOE.

20. Defendants DOES 8 through 10, inclusive, are other persons, who are in some substantial way liable and responsible for, or otherwise caused or participated in, the actions complained of by plaintiffs in this action. DOES 8 through 10, inclusive, are natural persons whose identities are presently unknown to the plaintiffs, who, therefore, sue these persons by the fictitious name DOE.

21. At all times complained of herein, DOES 8 through 10, inclusive, were acting pursuant to their authority as public officials and/or police officers and/or peace officers and/or deputy sheriffs and/or investigators or other officials with said City and/or said County and/or some other public entity, and were acting in the course of and within the scope of their employment with the City of Huntington Beach Police Department and/or with said County and/or or some other public entity. Plaintiffs will amend their complaint to show the true identities of DOES 8 through 10, inclusive, when they become aware of said identities.

22. At all times complained of herein, defendants RANDELL, PARKER, TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 10,

inclusive, and 1 through 10, inclusive, were individual persons acting under the color of state law; under and pursuant to their status and authority as public officers and/or police officers and/or peace officers and/or deputy sheriffs and/or investigators and/or other public officials and/or some other person acting under the color of state law.

23. Moreover, at all times complained of herein, defendants RANDELL, PARKER, TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the Huntington Beach Police Department and/or the County of Orange, for, *inter alia*, 1) unlawfully and unreasonably using excessive force and/or deadly force on persons; 2) for unlawfully and unreasonably entering, searching and seizing private homes; 3) for unlawfully and unreasonably displacing / dispossessing persons from their homes; 4) for unlawfully and unreasonably seizing persons (especially witnesses to and/or victims [indirect or otherwise] officer involved shootings); 5) for unlawfully and unreasonably using excessive force on persons, 6) for using seizures of persons pursuant to Cal. Welf. & Inst. Code § 5150 (seizures for civil protective custody) as a subterfuge to obtain blood drug and alcohol information on persons, whose blood sample could not otherwise had been involuntarily obtained, in order to use blood-alcohol results against them in anticipated and/or pending civil litigation,

and for 7) otherwise violating the fourth amendment search and seizure rights of persons in the community, in general.

24. Moreover, at all times complained of herein, and DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the City of Huntington Beach Police Department and/or the City of Huntington Beach and/or the County of Orange and/or Orange County District Attorney's Office and/or the Orange County Sheriff's Department, for, *inter alia*, 1) unlawfully and unreasonably using excessive force and/or deadly force on persons; 2) for unlawfully and unreasonably entering, searching and seizing private homes; 3) for unlawfully and unreasonably displacing / dispossessing persons from their homes; 4) for unlawfully and unreasonably seizing persons (especially witnesses to and/or victims [indirect or otherwise] officer involved shootings); 5) for unlawfully and unreasonably using excessive force on persons, 6) for unlawfully and unreasonably using deadly force on persons, 7) for using seizures of persons pursuant to Cal. Welf. & Inst. Code § 5150 (seizures for civil protective custody) as a subterfuge to obtain blood drug and alcohol information on persons, whose blood sample could not otherwise had been involuntarily obtained, in order to use blood-alcohol results against them in anticipated and/or pending civil litigation, and for 8) otherwise

violating the fourth amendment search and seizure rights of persons in the community, in general.

25. In addition to the above and foregoing, all of the individually named defendants to this action, including said DOE defendants, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiffs of their constitutional rights as described below, and acted in joint and concerted action to so deprive the plaintiffs of their constitutional rights as set forth below; all in violation of 42 U.S.C. § 1983 and otherwise in violation of California state law.

26. Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a legal cause the violation of the plaintiffs' constitutional rights, as set forth below. Plaintiffs timely filed their claims and their amended claims against said City and said County, pursuant to the California Tort Claims Act, Cal. Gov't Code § 900 *et seq.*, and said claims and amended claims were denied less than six months prior to the date of the filing of the complaint in this action.

## FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983

Violation Of Fourth And Fourteenth Amendment Rights
Unlawful And Unreasonable Use Of Deadly Force
(Section 1983 Wrongful Death / Interference With Parent Child Relationship
(By All Plaintiffs Against Defendants RANDELL, PARKER, City of Huntington Beach and DOES 1 to 10, inclusive)

27. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 26, inclusive, above, as if set forth in full herein.

28. In the early morning hours of August 25, 2006, Ashley Anne MacDonald ("ASHLEY"), date of birth October 20, 1987, returned home[1] where she resided with her mother; plaintiff Lisa Marie Guy ("LISA MARIE"). ASHLEY had apparently been drugged[2] and date-raped that night, and when she returned home that morning, she was very scared and disoriented[3].

29. When she tried to leave home, her mother, LISA MARIE tried to hug and hold onto her and prevent her from leaving[4], and ASHLEY apparently inadvertently made a small surface cut on the back of LISA MARIE'S wrist with a pocket knife, while trying to get away from her mother (LISA MARIE) and leave their apartment.

30. ASHLEY then ran from her home, and eventually ended-up at neighboring Sun View Park[5]. As ASHLEY was walking in the park[6] at approximately 7:30 a.m. apparently Huntington Beach Police Department black

---

[1] At 16162 Sher Lane, Apt. 78, Huntington Beach, CA 92647.
[2] Apparently without her consent.
[3] Apparently still drugged.
[4] It was obvious that Ashley MacDonald was in no condition to leave home.
[5] Sun View Park in Huntington Beach, California, near the intersection of Sher and Amazon.
[6] At approximately the intersection of Sher and Amazon in Huntington Beach, CA.

and white patrol cars drove-up[7] to ASHLEY'S location, and the two Huntington Beach Police Department officers, defendants Shawn Randell ("RANDELL") and Read Parker ("PARKER") (and DOES 1 and 2, inclusive) exited their Huntington Beach Police Department patrol cars and approached ASHLEY with their handguns pointed at her.

31. RANDELL and PARKER (and DOES 1 and 2, inclusive) proceeded to walk-up close to ASHLEY; notwithstanding the fact that they had been notified (via radio or otherwise) of ASHLEY'S "bizarre" behavior prior to their arrival at the scene at the park, notwithstanding the fact that it was apparent to them ASHLEY was acting like an obviously mentally impaired person and was basically obviously "out of it", and notwithstanding the fact that another/other Huntington Beach Police Department officer(s) was/were at the scene and was obtaining less than lethal weapons from his/her/their HBPD patrol vehicle, that was also at the scene of the shooting of ASHLEY.

32. Accordingly, rather wait a very short time for the HBPD officer(s) to bring the less than lethal device(s) with them to approach ASHLEY at the park (who, again, was standing all alone, and not threatening anyone), RANDELL and PARKER (and DOES 1 and 2, inclusive) proceeded to walk-up close to ASHLEY, and to order her several times to drop the pocket knife (that she was holding with

[7] In response to a phone call from one of LISA MARIE'S neighbors.

both of her hands, against her chest, and pointed up toward her throat / chin area), and when ASHLEY took a step to begin to walk away from said defendants, they shot her with their HBPD service pistols multiple times, and killed her.

33. At the time that said defendants shot and killed ASHLEY, ASHLEY had never lunged at the officers or otherwise did anything threatening toward them or to anyone else[8].

34. Moreover, defendant City of Huntington Beach (Huntington Beach Police Department) negligently trained and/or failed to train their officers, including RANDELL and PARKER (and DOES 1 and 2, inclusive), properly on how to handle situations involving mentally ill / mentally impaired people, such as persons in ASHLEY'S condition.

35. Moreover, RANDELL and PARKER (and DOES 1 and 2, inclusive) used excessive / unreasonable force on ASHLEY, and were also negligent in their shooting of ASHLEY, when said shooting was neither legally or morally justified or necessary under the circumstances. ASHLEY did not pose an immediate threat to anyone, was not escaping, and that there was no warning by defendants before shooting her. Moreover, said defendants could have easily disarmed ASHLEY with their police batons, and either left said batons in their patrol cars, or simply declined to simply and easily disarm ASHLEY with their batons, and opted to

simply shoot her to death. Moreover, said defendants only shot ASHLEY a couple of times while she was standing / upright, and said defendants continued to shoot ASHLEY while she was on the ground, posing no threat to them (or to anyone else) at all. Said "extra" shots[9] were those that killed ASHLEY, and as explained above, there simply was no justification for having shot ASHLEY at all; especially after she had fallen.

36. ASHLEY was taken to Huntington Beach Hospital, where she died at approximately 8:38 a.m. that same day.

37. Additional Huntington Beach Police Department officers, as well as Orange County Sheriff's Department Deputy Sheriffs and/or Investigators and/or Supervisors, and Orange County District Attorney's Office personnel (apparently peace officers and/or investigators), including defendants TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 8, inclusive arrived on the scene, and "taped-off" the neighboring park and the adjoining apartment building that LISA MARIE and ASHLEY resided at; calling it a "crime scene."

38. Moreover, said peace officers and/or police officers and/or deputy

---

[8] Apparently, no one else was at the park at that time.
[9] At this point in time, plaintiff are aware that ASHLEY was shot approximately 15 times. At this point in time, plaintiffs are also aware that defendants had only fired a couple of shots at ASHLEY when she fell to the ground, when defendants then fired the great majority of their pistols shots at her.

sheriffs and/or investigators and/or other public officers / officials (including TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 8, inclusive), then unlawfully seized and falsely imprisoned[10] LISA MARIE at the gazebo type area in the back courtyard area of her apartment complex[11] for several hours, and refused to let her leave their presence; against her will.

39. LISA MARIE had heard the guns shots that struck and killed ASHLEY, above-referenced, but did not know at that time that ASHLEY had been shot.

40. LISA MARIE asked the peace officers where ASHLEY was and when could she see her, and they repeatedly told her that ASHLEY was okay and that she would be able to see ASHLEY in a little while; notwithstanding the fact that the peace officers knew that ASHLEY had already passed away.

41. Also, while said defendants were falsely imprisoning / unlawfully seizing LISA MARIE in the courtyard gazebo area, other peace officers and/or police officers and/or investigators and/or some other type of public officers / public officials from the Huntington Beach Police Department

---

[10] Said false imprisonment was committed in pursuant to a routine policy of the County of Orange and the City of Huntington Beach, to unlawfully seize and falsely imprison witnesses and others, in order to carry out civil liability investigations, and to prevent the victims of their misconduct from doing their own investigations.

[11] At 16162 Sher Lane.

and/or the Orange County Sheriff's Department and/or the Orange County District Attorney's Office (including TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 3 through 8, inclusive) were unlawfully searching through LISA MARIE's apartment; without her consent or knowledge.

42. Apparently then, when the search of the apartment had been completed, the peace officers and/or police officers and/or deputy sheriffs and/or investigators and/or other public officers / officials (including DOES 1 through 8, inclusive), investigators escorted LISA MARIE up to her apartment, and continued to falsely imprison / unlawfully seize her therein for several more hours; not permitting her to leave her apartment, and still telling LISA MARIE that her daughter was okay, and that she could go see her in a little while (notwithstanding the fact that the peace officers knew that ASHLEY had passed away at 8:38 a.m. that morning.)

43. Finally, during the mid-afternoon on August 25, 2006, a representative of the Orange County Coroner's Office / Orange County Sheriff's Department entered LISA MARIE'S apartment, and told her that her daughter (ASHLEY) didn't survive her wounds and had passed away.

44. Now furious with the peace officers and/or police officers and/or deputy sheriffs and/or investigators and/or other public officers / officials (including DOES 1 through 8, inclusive), and distraught about ASHLEY'S passing

away, LISA MARIE complained to the peace officers and/or police officers and/or deputy sheriffs and/or investigators and/or other public officers / officials (including DOES 1 through 8, inclusive), about their having lied to her about her daughter's well being, and ordered them out of her apartment (to leave her apartment).

45. When she did so, said the peace officers and/or police officers and/or deputy sheriffs and/or investigators and/or other public officers / officials (including defendants TURNER, VOGHT, TODD, SUTTON, SHULL DOES 1 through 8, inclusive), proceeded to falsely, unlawfully and wrongfully take LISA MARIE into civil protective custody (pursuant to Cal. Welf & Inst Code § 5150), and took her to Huntington Beach Hospital, where they had the hospital take blood samples from LISA MARIE; apparently in an effort to mitigate the civil liability of said defendants, by attempting to find evidence of illegal narcotics in LISA MARIE'S blood.[12]

46. Said actions by said defendants were outrageous and shocking to the conscience, constituted the use of unreasonable force upon ASHLEY, and violated KENNETH'S and LISA MARIE'S right to their parent – child relationships under the fourteenth amendment to the United States Constitution.

47. Said actions by defendants also constituted the use of unreasonable force upon plaintiffs' deceased, ASHLEY, in violation of KENNETH'S and LISA MARIE'S right to their child parent relationship, and otherwise, under the fourth amendment to the United States Constitution.

48. As a direct and proximate result of defendants' actions, above-referenced, plaintiffs LISA MARIE and KENNETH: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs/bills and expenses, 3) lost the use of, possession of , and enjoyment of LISA MARIE'S real property, 4) incurred the loss of society, comfort, solace and their parent – child relationship with ASHLEY, 5) incurred funeral / burial expenses, and 6) incurred other special and general damages and expenses; all in an amount to be proven at trial; in excess of $10,000,000.00 each.

49. As a direct and proximate result of defendants' actions, above-referenced, plaintiff Estate of Ashley Anne MacDonald suffered pre-death pain and suffering by ASHLEY, suffered a loss of ASLEY'S future income, and suffered other general and special damages, in an amount in excess of $10,000,000.00.

50. The actions by said defendants were done maliciously and in reckless

---

[12] The blood tests were negative for all illicit drugs, and was only positive for the benzodiazepine traces that were from her properly and legally prescribed and obtained medications.

disregard of plaintiffs' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants (save CITY and COUNTY) in an amount to be shown at trial; in excess of $20,000,000.00.

///

SECOND CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983
Violation Of Fourth Amendment Rights
Unlawful Warrantless Entry Into And Search And Seizure Of Private Residence
(By Plaintiff Lisa Marie Guy Against Defendants County Of Orange, City Of Huntington Beach, TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 10, inclusive)

51. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50, inclusive, above, as if set forth in full herein.

52. As shown above and in addition thereto, defendants entered into and searched and seized[13] plaintiff LISA MARIE'S home, in the absence of a warrant, voluntary consent, or an emergency.

53. Said actions by defendants, as described above and otherwise herein, were shocking to the conscience and constitute a violation of plaintiffs' rights under the fourth amendment to the United States Constitution, to be free from an entry into and search of plaintiffs' private residence, including the curtilage

---

[13] Such as by unlawful exclusively occupying another's home and/or by summarily dispossessing and/or ejecting persons from their homes and/or by preventing persons from retreating into their homes.

surrounding the same, in the absence of a warrant, voluntary consent, or an emergency.

54. As a direct and proximate result of defendants' actions, above-referenced, plaintiff LISA MARIE was substantially physically, mentally and emotionally injured, and incurred medical and psychological costs/bills and expenses, loss of possession, use and enjoyment of personal and real property, and other special and general damages and expenses; all in an amount to be proven at trial; in excess of $10,000,000.00.

55. The actions by said defendants were done maliciously and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants (save CITY) in favor of LISA MARIE in an amount to be shown at trial, in excess of $10,000,000.00.

THIRD CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983
Violation Of Fourth Amendment Rights
Unlawful Search and Seizure Of Person
(By Plaintiff Lisa Marie Guy Against Defendants County Of Orange, City Of Huntington Beach, TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 10, inclusive)

56. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 55, inclusive, above, as if set forth in full herein.

57. As shown above, none of the defendants had reasonable suspicion of

criminality afoot by any of the plaintiffs (including and especially LISA MARIE), none of the defendants had probable cause to have believed that any of the plaintiffs (including and especially LISA MARIE) had committed a crime, none of the defendants had a warrant for any of the plaintiffs (including LISA MARIE), and none of the defendants had any probable or reasonable cause to believe that any of the plaintiffs (including LISA MARIE) presented a potential threat of danger to anyone.

58. Plaintiff LISA MARIE GUY was also held / seized by defendants TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 10, inclusive for an unreasonable and lengthy period of time, and in a manner obviously unnecessarily restrictive, all without a warrant, probable cause to do so, and while (and so that) the defendants could conduct their civil liability investigation, to protect and/or to mitigate any civil liability that defendants had to plaintiffs.

59. Said actions by said defendants, as described above and otherwise herein, constitute a violation of LISA MARIE'S right under the fourth amendment to the United States Constitution to be free from an unlawful and unreasonable seizure of her person.

60. As a direct and proximate result of said defendants' actions, above-

referenced, plaintiff LISA MARIE was substantially physically, mentally and emotionally injured, and incurred medical and psychological costs/bills and expenses, loss of possession, use and enjoyment of, and damage to personal and real property, and other special and general damages and expenses; all in an amount to be proven at trial; in excess of $10,000,000.00.

61. The actions by said defendants were done maliciously and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants (save CITY and COUNTY) in favor of plaintiff LISA MARIE in an amount to be shown at trial, in excess of $10,000,000.00.

## FOURTH CAUSE OF ACTION

Wrongful Death (Cal. Civ. Proc. Code § 377.60 *et seq.*)
Under California State Law
(By Plaintiffs Lisa Marie Guy And Kenneth Macdonald Against Defendants RANDELL, PARKER, City of Huntington Beach and DOES 1 to 10, inclusive)

62. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 61, inclusive, above, as if set forth in full herein.

63. As shown above, plaintiffs LISA MARIE and KENNETH are the only heirs at law of ASHLEY, and are entitled to inherit from ASHLEY via intestate succession under California state law, as they were ASLEY'S mother and father, and as ASHLEY died intestate, and without issue.

64. Also as shown above, said defendants wrongfully, unlawfully and

unjustifiably shot and killed ASHLEY.

65. As a direct and proximate result of defendants' actions, above-referenced, plaintiffs LISA MARIE, KENNETH and THE ESTATE OF ASHLEY MACDONALD were substantially physically, mentally and emotionally injured, lost the solace, society and comfort of ASHLEY, and plaintiffs incurred medical and psychological costs/bills and expenses, loss of possession, use and enjoyment of, and damage to personal and real property, incurred the loss of society, comfort, solace and their parent – child relationship with ASHLEY, and other special (such as lost future wages / profits) and general damages and expenses; all in an amount to be proven at trial; in excess of $10,000,000.00 each.

66. The actions by said defendants were done maliciously and oppressively, and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against defendants (save CITY and COUNTY) in an amount to be shown at trial, in excess of $10,000,000.00.

FIFTH CAUSE OF ACTION
FAILURE TO ADEQUATELY TRAIN OFFICERS
42 U.S.C. § 1983
(By All Plaintiffs Against Defendants City of Huntington Beach and County of Orange)

67. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 62, inclusive, above, as if set forth in full herein.

68. The training policies of the defendant City of Huntington Beach /

Huntington Beach Police Department were not adequate to train its police officers, investigators and other employees to handle the usual and recurring situations with which they must deal, such as that they confronted when approaching and dealing with person like and acting like ASHLEY, as described above; a situation that could have and should have been resolved without resorting to the use of deadly force on ASHLEY. In addition, said defendants' method of training peace officers, police officers, deputy sheriffs, investigators and other public officers / officials, was carried out by them recklessly, and with deliberate indifference to the state and federal constitutional rights of members of the public.

69. Moreover, the training policies of the defendant City of Huntington Beach / Huntington Beach Police Department were not adequate to train its police officers, investigators and other employees to handle the usual and recurring situations with which they must deal; such as that they confronted when approaching and dealing with person like and acting like ASHLEY, as described above; a situation that could have and should have been resolved without repeatedly shooting a person such as ASHLEY, who has already been shot, and who posed no threat to defendants.

70. Moreover, the training policies of the defendant City of Huntington Beach / Huntington Beach Police Department, as well as the training policies of defendants County of Orange (via the Orange County District Attorney's Office

and the Orange County Sheriff's Department) were not adequate to train its peace officers / police officers / deputy sheriffs / investigators / other public officials, not to unlawfully seize persons or to falsely imprison them, such as LISA MARIE, who are witnesses to and/or relatives or friends of, persons who were recently shot and/or killed by peace officers, who was so unlawfully seized and falsely imprisoned by defendants, as described above.

71. Moreover, the training policies of the defendant City of Huntington Beach / Huntington Beach Police Department, as well as the training policies of defendants County of Orange (via the Orange County District Attorney's Office and the Orange County Sheriff's Department) were not adequate to train its peace officers / police officers / deputy sheriffs / investigators / other public officials, not to unlawfully "seize"[14] and search persons' homes, and to summarily dispossess them therefrom, such as LISA MARIE'S apartment[15], above-described, and to falsely imprison them, as was LISA MARIE by defendants, as described above.

72. As a direct and proximate result of defendants' actions, above-referenced, plaintiffs were substantially physically, mentally and emotionally injured, and incurred medical and psychological costs/bills and expenses, loss of

---

[14] Such as by unlawful exclusively occupying another's home and/or by summarily dispossessing and/or ejecting persons from their homes and/or by preventing persons from retreating into their homes.

possession, use and enjoyment of, and damage to personal and real property, funeral and burial expenses, incurred the loss of society, comfort, solace and their parent – child relationship with ASHLEY, and other special and general damages and expenses; all in an amount to be proven at trial; in excess of $10,000,000.00 each

73. The actions by said defendants were done maliciously and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants (save defendants City of Huntington Beach and County of Orange) in favor of plaintiffs in an amount to be shown at trial, in excess of $10,000,000.00 each.

SIXTH CAUSE OF ACTION
42 U.S.C. § 1983
Failure To Adequately Screen and Hire
(By All Plaintiffs Against defendants City of Huntington Beach, County of Orange, and DOES 6 through 10, inclusive)

74. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 73, inclusive, above, as if set forth in full herein.

75. In addition to the above and foregoing, defendants County Of Orange's and City of Huntington Beach's methods of screening and doing proper background checks on prospective applicants for appointments (hiring) for the

[15] That is, such as LISA MARIE'S summary dispossession from her home following her daughter (ASHLEY'S) shooting.

position of peace officer and/or deputy sheriff and/or police officer and/or investigator and/or supervisor, were so inadequate, and were so recklessly deliberately indifferent to members of the public, to screen-out applicants who were violent and who had shown a propensity for violence, to screen-out applicants who were dishonest and could not be trusted to obey the laws of the State of California and of the United States of America, to screen-out applicants to were not likely to respect the California and federal constitutional rights of members of the public (such as the right to be free from an unlawful seizure of their persons and their right to be free from the use of unreasonable force upon their [and their decedents'] persons), to screen-out applicants who would unlawfully seize witnesses to and friends and relatives of police shooting victims, and to screen-out applicants who would unlawfully search and seize private residences of witnesses to and friends and relatives of police shooting victims, so as to show a deliberate and /or reckless indifference to the California and federal constitutional rights of members of the public.

76. As a proximate result of defendants failure to adequately screen and hire the individual defendants complained of in this action, plaintiffs: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs/bills and expenses, 3) incurred burial and funeral expenses, 4) incurred the loss of society, comfort, solace and their parent – child relationship

with ASHLEY, and 5) incurred other special and general damages and expenses; all in an amount to be proven at trial; in excess of $10,000,000.00 each.

77. Said actions by said defendants were done maliciously and in reckless disregard of plaintiffs' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants (save defendants City of Huntington Beach and County of Orange) in an amount to be shown at trial; in excess of $10,000,000.00 each.

SEVENTH CAUSE OF ACTION

Negligence Under California State Law

(By All Plaintiffs Against defendants City of Huntington Beach, County of Orange, and DOES 6 through 10, inclusive)

78. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 77, inclusive, above, as if set forth in full herein.

79. As set forth above, defendants County Of Orange's and City of Huntington Beach's methods of screening and doing proper background checks on prospective applicants for appointments (hiring) for the position of peace officer and/or deputy sheriff and/or police officer and/or investigator and/or supervisor, were so inadequate, and were so recklessly deliberately indifferent to members of the public, to screen-out applicants who were violent and who had shown a propensity for violence, to screen-out applicants who were dishonest and could not be trusted to obey the laws of the State of California and of the United States of

America, to screen-out applicants to were not likely to respect the California and federal constitutional rights of members of the public (such as the right to be free from an unlawful seizure of their persons and their right to be free from the use of unreasonable force upon their [and their decedents'] persons), to screen-out applicants who would unlawfully seize witnesses to and friends and relatives of police shooting victims, and to screen-out applicants who would unlawfully search and seize private residences of witnesses to and friends and relatives of police shooting victims, so as to show a deliberate and /or reckless indifference to the California and federal constitutional rights of members of the public, as to constitute and a breach of said defendants' duty of care that they owed to the public to properly hire and to properly screen applicants for hiring as a peace officer, police officer, deputy sheriff, investigator, supervisor or other type of public officer.

80. The training policies of the defendant City of Huntington Beach / Huntington Beach Police Department and of the County of Orange (including the Orange County District Attorney's Office and the Orange County Sheriff's Department) included training peace officers and/or police officers and/or investigators and/or deputy sheriffs and/or other public officers to unlawfully seize witnesses to and friends and relatives of police shooting victims, and to unlawfully search and seize private residences of witnesses to and friends and relatives of

police shooting victims. This training was wrongful and inadequate to properly train said peace officers and/or police officers and/or investigators and/or deputy sheriffs and/or other public officers.

81. Moreover, defendant City of Huntington Beach's training policies were not adequate to train its police officers, investigators and other employees to handle the usual and recurring situations with which they must deal; such as that they confronted when approaching and dealing with person like and acting like ASHLEY, as described above; a situation that could have and should have been resolved without resorting to the use of deadly force on ASHLEY (as described above; a situation that could have and should have been resolved without repeatedly shooting a person such as ASHLEY, who has already been shot, and who posed no threat to defendants), so as to constitute a breach of said defendants' duty of care that they owed to the public to properly hire and to properly screen applicants for hiring as a peace officer, police officer, or other type of public officer, and to properly train said peace officers, police officers, or other type of public officers.

82. Accordingly, said actions and omissions by defendants constituted a breach of said defendants' duty of care that they owed to members of the public, including plaintiffs and plaintiffs' deceased.

83. Accordingly, as a proximate result of said negligent training by

defendants, plaintiffs LISA MARIE and KENNETH were deprived of their parent – child relationship with their daughter ASHLEY, plaintiff LISA MARIE was unlawfully seized and falsely imprisoned by defendants, as described above, ASHLEY was unlawfully and unjustifiably shot and killed, plaintiff LISA MARIE'S home was unlawfully searched and seized by defendants, and LISA MARIE was unlawfully dispossessed of and was prevented from entering her home during the August 25, 2006 incident complained of in this action.

84. Accordingly, said actions and omissions by defendants constitute a breach of said defendants' duty of care that they owed to members of the public, including plaintiffs and plaintiffs' deceased.

85. As a direct and proximate result of defendants' actions, as above-referenced, plaintiffs: 1) were substantially physically, mentally and emotionally injured; 2) suffered the loss of use of their real property 3) incurred medical and psychological costs/bills and expenses, 4) incurred the loss of society, comfort, solace and their parent – child relationship with ASHLEY, and 5) incurred other special and general damages and expenses, including funeral and burial expenses; all in an amount to be proven at trial; in excess of $10,000,000.00 each.

## EIGHTH CAUSE OF ACTION

Negligence Under California State Law

(By All Plaintiffs Against defendants RANDELL, PARKER, City of Huntington Beach and DOES 1 through 10, inclusive)

86. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 85, inclusive, above, as if set forth in full herein.

87. As described above, the individual defendants' actions complained of during said subject August 25, 2006 incident complained of in this action constituted a breach of said defendants' duty to use due care toward plaintiffs, their property, and their late daughter, ASHLEY, under California state law.

88. Said defendants knew or should have known that if they intended to detain, investigate and or seize ASHLEY, and if force was possibly be necessary to do so, that they should have done all that they could have done to make sure to use of non-lethal force before using lethal force on ASHLEY. Defendants were there to detain, investigate and possibly seize and/or to help ASHLEY, and to assist her rather than to kill her.

89. Therefore, said defendants knew or should have known that if it was going to be necessary to use force on ASHLEY, that the defendants should have availed themselves of a non-lethal form of compliance and/or restraint, rather than the use of lethal force as the only option, as under the circumstances, the use of deadly force upon ASHLEY was unnecessary, excessive and unreasonable force, that resulted in her death.

90. Moreover, said defendants had a duty to ASLEY and to the plaintiffs,

not to place themselves in a position of peril (that is, in very close proximity to ASHLEY, that is not in a position of not using their vehicles or other physical objects as cover, and not in a position so close to ASHLEY as to arguably place themselves in danger from any movement by ASHLEY), so that any movement(s) by ASHLEY could be "characterized" (or mischaracterized) as putting said defendants in position of danger.

91. Moreover, said defendants had a duty to ASLEY and to the plaintiffs, to use non-lethal force (if the use of force was necessary at all) upon ASHLEY; a duty that they breached.

92. As a direct and proximate result of defendants' actions, as above-referenced, plaintiffs: 1) were substantially physically, mentally and emotionally injured; 2) suffered the loss of use of their real property 3) incurred medical and psychological costs/bills and expenses, 4) incurred the loss of society, comfort, solace and their parent – child relationship with ASHLEY, and 5) incurred other special and general damages and expenses, including funeral and burial expenses; all in an amount to be proven at trial; in excess of $10,000,000.00 each.

<u>NINTH CAUSE OF ACTION</u>
FALSE ARREST / FALSE IMPRISONMENT
Under California State Law
(By Plaintiff LISA MARIE and Against defendants City of Huntington Beach, County of Orange, TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 10, inclusive)

93. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 92, inclusive, above, as if set forth in full herein.

94. As shown above, the actions by said defendants, described above, constituted a false arrest / false imprisonment of plaintiff LISA MARIE under California state law.

95. Defendants are liable to plaintiff LISA MARIE for said false arrest / false imprisonment pursuant to Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.2, 820.8, and otherwise pursuant to the common-law.

96. The actions by said defendants, above-described, caused plaintiff LISA MARIE to suffer substantial physical injuries, severe mental and emotional distress and suffering, medical / psychological bills, loss of possession, use and enjoyment of personal and real property, other costs and expenses, and other costs and expenses, in an amount to be shown at trial, in excess of $10,000,000.00.

97. The actions by said defendants were done maliciously and oppressively, and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against defendants (save defendants City of Huntington Beach and County of Orange) in an amount to be shown at trial, in excess of $10,000,000.00.

## TENTH CAUSE OF ACTION
### Wrongful Eviction / Forcible Detainer Under California State Law

(By Plaintiff LISA MARIE and Against defendants TURNER, VOGHT, TODD, SUTTON, SHULL, City of Huntington Beach, County of Orange, and DOES 1 through 10, inclusive)

98. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 97, inclusive, above, as if set forth in full herein.

99. As shown above, plaintiff LISA MARIE was forcibly, wrongfully and unlawfully ejected and prevented from entering her private residence by defendants TURNER, VOGHT, TODD, SUTTON, SHULL and DOES 1 through 10, inclusive

100. As shown above, defendants had to right to have either entered, searched and seized plaintiff LISA MARIE'S apartment / home, which they did during the August 25, 2006 incident complained of in this action.

101. As shown above, plaintiff LISA MARIE (and ASHLEY) had the exclusive right to occupy and possess her private apartment at 16162 Sher Lane, Apt. 78, Huntington Beach, CA 92647.

102. As shown above, defendants did not have a warrant, voluntary consent or an emergency situation, and nonetheless entered, searched and dispossessed plaintiff LISA MARIE from her home, as described above.

103. Said actions by said defendants, as set forth above and below, constitute a wrongful eviction and a forcible detainer of plaintiff LISA MARIE from her home under California state law.

104. As a direct and proximate result of defendants' actions, above-referenced, plaintiff LISA MARIE: 1) was substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs/bills and expenses, and 3) incurred other special and general damages and expenses; all in an amount to be proven at trial; in excess of $10,000,000.00.

105. The actions by said defendants were done oppressively, maliciously, and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against defendants (save defendants City of Huntington Beach and County of Orange) in an amount to be shown at trial, in excess of $10,000,000.00 each.

## ELEVENTH CAUSE OF ACTION

Violation Of Cal. Civil Code § 52.1
Under California State Law
(By Plaintiffs LISA MARIE and KENNETH Against defendants TURNER, VOGHT, TODD, SUTTON, SHULL, City of Huntington Beach, County of Orange, and DOES 1 through 10, inclusive)

106. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 112, inclusive, above, as if set forth in full herein.

107. The actions by defendants interfered with, and/or attempted to interfere with, by threats, intimidation, and coercion, and by the actual use of force, the exercise or enjoyment by plaintiffs of rights secured by the Constitution or laws of the United States, and of the rights secured by the California Constitution and the laws of California, as described above; in violation of Cal. Civil Code § 52.1.

108. Defendants are liable to plaintiffs for said violations of their constitutional and statutory rights, pursuant to Cal. Civil Code § 52.1, and Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.8.

109. As a direct and proximate result of defendants' actions, as above-referenced, plaintiffs: 1) were substantially physically, mentally and emotionally injured; 2) suffered the loss of use of their real property 3) incurred medical and psychological costs/bills and expenses, 4) incurred the loss of society, comfort, solace and their parent – child relationship with ASHLEY, and 5) incurred other special and general damages and expenses, including funeral and burial expenses; all in an amount to be proven at trial; in excess of $10,000,000.00 each.

110. The actions by said defendants were done maliciously and oppressively, and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against defendants (save defendants City of Huntington Beach and County of Orange) in an amount to be shown at trial, in excess of $10,000,000.00 each.

111. In addition, pursuant to Cal. Civil Code § 52.1, plaintiffs are entitled to an award of treble compensatory damages against defendants.

## TWELTH CAUSE OF ACTION
### Trespass To Private Residence Under California State Law

(By Plaintiff LISA MARIE and Against defendants TURNER, VOGHT, TODD, SUTTON, SHULL, City of Huntington Beach, County of Orange, and DOES 1 through 10, inclusive)

112. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 111, inclusive, above, as if set forth in full herein.

113. The actions by defendants constituted a trespass to the plaintiff LISA MARIE'S private residence under California state law.

114. The actions by said defendants, above-described, caused plaintiff LISA MARIE to suffer substantial personal injuries, severe mental and emotional distress and suffering, medical / psychological bills, loss of possession, use and enjoyment of personal and real property, other costs and expenses, in an amount to be shown at trial, in excess of $10,000,000.00.

115. The actions by said defendants were done maliciously and oppressively, and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against defendants (save defendants City of Huntington Beach and County of Orange) in an amount to be shown at trial, in excess of $10,000,000.00.

<u>THIRTEENTH CAUSE OF ACTION</u>
<u>42 U.S.C. § 1983</u>
<u>Right To Be Free From Unreasonable Force Upon Person</u>
(Via Cal. Civ. Proc. Code § 377.20 *et seq.*)
Under California State Law

(By Plaintiff Ruth C. Steering, Administrator of the Estate Of Ashley Anne MacDonald, Against All Defendants REED, PARKER, City of Huntington Beach and DOES 1 through 10, inclusive)

116. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 115, inclusive, above, as if set forth in full herein.

117. As shown above, defendants REED, PARKER and DOES 1 through 10, inclusive used unreasonable and excessive force upon plaintiff's deceased, Ashley Anne MacDonald by shooting her.

118. Said use of unreasonable force upon Ashley Anne MacDonald was done in violation of her right to be free from unreasonable force under the Fourth Amendment to the United States Constitution.

119. Said use of unreasonable force upon Ashley Anne MacDonald resulted in severe physical, mental and emotional pain, suffering and distress, and ultimately resulted in the death of Ashley Anne MacDonald.

120. Said use of unreasonable force upon Ashley Anne MacDonald also resulted in medical, funeral and burial costs and expenses.

WHEREFORE, plaintiffs Lisa Marie Guy, Ruth C. Steering, Administratrix Of The Estate Of Ashley Anne MacDonald, Deceased, On Behalf Of The Estate Of Ashley Anne MacDonald and Kenneth Francis MacDonald, pray for judgment against defendants, and each of them, as follows:

1. That each plaintiff be awarded a judgment against all defendants for compensatory damages, including treble compensatory damages, in an amount in to be proven at trial, in excess of $30,000,000.00;

2. That plaintiffs be awarded a judgment against all defendants, (save defendants City of Huntington Beach and County of Orange) for punitive / exemplary damages in an amount in to be proven at trial, in excess of $10,000,000.00 each;

3. That plaintiffs be awarded reasonable attorney's fees and costs of suit herein;

4. That plaintiffs be given a trial by jury; and

5. That this honorable court make and award such other relief as this honorable court deems just and equitable.

LAW OFFICE OF JERRY L. STEERING

Jerry L. Steering, Attorney for plaintiffs Lisa Marie Guy and Ruth C. Steering, Administratrix Of The Estate Of Ashley Anne MacDonald, Deceased, On Behalf Of The Estate Of Ashley Anne MacDonald

LAW OFFICE OF JOHN R. COGORNO

John R. Cogorno, Attorney for plaintiff Kenneth MacDonald

LAW OFFICES OF ANDREW M. STEIN

Andrew M. Stein, Attorney for plaintiff Ruth C. Steering, Administratrix Of The Estate Of Ashley Anne MacDonald, Deceased, On Behalf Of The Estate Of Ashley Anne MacDonald